Geai-iam, Judge,
delivered the opinion of the court:
The plaintiffs are the executors of John Arthur James under ancillary letters testamentary issued in the State of New York on September 13, 1917.
John Arthur James, a British subject residing in London, died in that city on April 30, 1917, leaving a last will, in which he named the plaintiffs as his American executors to administer his personal estate situated in the United States. They duly qualified as such.
*387 The plaintiffs’ testator some time prior to his death, being then the owner and holder of certain shares of stock, deposited them in fhe British treasury pursuant to the provisions of a statute enacted by the British Government in 1915, and received therefor a certificate of deposit, or treasury warrant, a copy of which is not in the record. Subsequent thereto, and on July 19, 1916, another British statute was passed, the provisions of which will be referred to herein. Under the provisions and inducements of this latter statute the plaintiffs’ testator deposited in and transferred to the British treasury all the said stock which, as stated, had theretofore been deposited in said treasury, and in addition thereto certain other shares of stock, which were received by the British treasury under “ Scheme B,” and for which he received other treasury warrants, in conformity with the provisions of said statute.
The greater part of these securities was pledged and re-pledged by the British treasury, and all of them, except 800 shares, had been redeemed prior to testator’s death, and were in the hands of J. P. Morgan & Co., of New York, the agents of the British treasury. All of said shares of stock had been, prior to testator’s death, transferred from the name of the testator on the books of the corporations that issued said stock, and were registered in the name of J. P. Morgan & Co., in their capacity as agents of the said treasury.
At the time of testator’s death all of said stock was within the United States and all of the treasury warrants issued to the testator were and had always remained within the Kingdom of Great Britain. Neither these securities so deposited in and transferred to the British treasury, nor any securities of a similar description and value, were ever returned to the testator or his executors. After testator’s death they were all sold by the British treasury between the dates July 17, 1919, and February 9, 1920, and the treasury warrants were sold, assigned, and transferred by testator’s English executors.
The shares of stock deposited in and assigned by the testator to the British treasury are the same stock, the value of which was included by the Commissioner of Internal *388 Revenue of the United States in the gross estate of the testator in determining and assessing the estate tax thereon. For the refund of the amount of this tax, which was paid under protest by the plaintiffs, this suit was brought.
Certain portions of the British finance act of 1916, being chapter 24, 6 and 7 George Y, will be found in a note appended hereto.[1] It will be seen that securities deposited under this act were deposited in and received by the treasury upon condition that they “ ultimately become at the disposal of the treasury,” and are “placed at the absolute disposal of the treasury,” and while so deposited are “ deemed to be at the absolute disposal of the treasury,” and that the offer of the securities for deposit shall be treated “ as an offer of the securities for sale.”
*389 The plaintiffs’ testator offered and deposited his securities upon these conditions and also upon the' following terms :
That the transfer was to expire at the end of five years from March 31, 1917.
That the treasury had a right to return the securities after March 31,1919.
That the depositor Avas entitled to receive from the treasury from time to time all interest and dividends paid in respect to said securities, and also one-half of 1 per cent per annum of the face value of the securities.
That the treasury had the right to dispose of the securities, but on this one condition: The lender Avas to continue to receive from the treasury the same payments he would have received if no disposition had been made.
That at the end of the period of loan the treasury had the right to return securities of the same description and amount as those deposited, or at its option to pay the depositor the deposit value of the securities with 5 per cent on the value plus accrued interest, and if the selling price exceeded the deposit value plus 5 per cent, then the average price realized by sales.
The depositor Avas required upon deposit to execute full and absolute transfers of registered stocks and bonds. The deposit certificates, or treasury warrants, as they were called, issued by the treasury Avere listed for dealings on the stock exchange.
It is plain that the plaintiffs’ testator in depositing these shares of stock first surrendered his possession thereof and executed transfers to .the British treasury, so that as far as these stocks were thereafter concerned he did not hold nor own them, because his right and ownership had been assigned to another upon delivery of the stocks with the right of disposal. After the transfer they were at the absolute disposal of the British treasury, as provided by the act finder Avhich they Avere deposited. In return for the surrender and transfer of these stocks, plaintiffs’ testator received a certificate of deposit or a treasury warrant which, by the terms of the act, bound the British GoA’ernment only to pay at the end of a given period the value of the stock as fixed in the act. In other words, the plaintiffs’ testator received *390 in lieu of the stock so deposited a promise to pay by the British treasury. He could not by any proceeding at law or in equity at any time after the deposit have recovered anything but the value of the stock, and at his death the time for payment of the treasury warrant by the British treasury had not matured. He had at his death a chose in action instead of the stock, a promise to pay. In this view of the matter it is difficult to see how, under the revenue act of September 8, 1916, 39 Stat. 756, this property could have been determined to be and assessed as part of testator’s gross estate because it was stock of domestic corporations “ owned and held ” by him as a nonresident.
The applicable part of the statute is as follows:
“ Seo. 202. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated:
“(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate.
“(&) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he lias created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for a fair consideration in money or money’s worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to. have been made in contemplation of death within the meaning of this title; * * *.
“(c) * * *
“ For the purpose of this title stock in a domestic corporation owned and held by a nonresident decedent shall be deemed property within the United States, * * *.”
Paragraph (c) above makes “stock in a domestic corporation owned and held by a nonresident * * * property within the United States ” for the purposes of the act. The first paragraph of section 202 covers all of the property, and it is within this paragraph that it was the purpose of the *391 act to incorporate stock in domestic corporations as part of the gross estate. But before it becomes or can be assessed as part of the gross estate it must have been “owned and held ” by the nonresident at the time of his death.
As clearly appears from the preceding discussion, the shares of stock involved in this case were at the time of the testator’s death neither owned nor held by him. The language of the statute is “ owned and held.” It is conjunctive, and the nonresident must not only at the time of his death have owned but also held the stock.
The final lawful sale and assignment to third parties by the British treasury of these shares of stock demonstrated that the possession, title, and ownership had passed to the British Government, all of them, as before stated, having been previously transferred on the books of the corporation to the name of J. P. Morgan & Co. The sale could have been legally made under the terms of deposit as well before the testator’s death as after, and had this been done it probably ■would not have been, and certainly could not have been, successfully contended that he owned and held them at the time of his death.
The plaintiffs’ testator, after the deposit and transfer, possessed no legal right at any time within five years or at the expiration thereof to demand or force the return of the specific shares deposited. Under these circumstances it can not be said that the British treasury was either a pledgee, a trustee, or a bailee, or that the plaintiffs’ testator had any of the rights of a pledgor, cestui que trust, or bailor. The transaction here possesses none of the elements to establish either relation, for he neither owned nor held the stock at the time of his death.
The case of Provost et al. v. United States, 269 U. S. 443, 455-457, is controlling. It involved the question whether in short sales of stock a broker who lent stock to another broker with the knowledge that he would transfer it to the possession of a thu'd party and thus gave him the power to do so, under an agreement to return other stock of the same kind, transferred title to the stock so delivered to the borrowing broker. The court held that it was such a transfer of title and said, “For the incidents of ownership the lender has *392 substituted the personal obligation, wholly contractual, of the borrower to restore him, on demand, to the economic position in which he would have been, as owner of the stock, had the loan transaction not been entered into ”; that is to say, had a. transaction similar in terms to the one we are considering been entered into in the United States between private individuals, it would, under the statute applicable in the Provost ease, have been “ a transfer of legal title ” and delivery of shares or certificates of stock within the language of the statute, and requiring the use of stamps as in that, case.
The instant case was not one of a deposit of stock as collateral for money loaned, for here all the incidents of legal ownership had passed from the plaintiffs’ testator to the British treasury. The certificates or warrants received by the testator were obligations “wholly contractual” under which the British treasury was only bound to return him “ to the economic situation in which he would have been had the transaction never taken place.”
It follows that this stock should not have been assessed as part of the gross estate of the plaintiffs’ testator by the Commissioner of Internal Revenue, and that the plaintiffs are entitled to recover the amount of tax assessed and paid by them on that account, which is the sum of $279,335.99. ■with interest at 6 per cent per annum from March 9, 1921.
Moss, Judge; Hay, Judge; Booth, Judge; and Campbell, Chief Justice, concur.

 An act to grant certain duties of customs and inland revenue (including excise), to alter their duties, and to amend the law relating to customs and inland revenue (including excise) and the national debt, and to make further provision in connection with finance; * * *.
Part 2, section 27. — In addition to any other income tax or supertax charged under this or any other act, there shall, subject to the provisions of this section, be charged, levied, and paid for the year beginning on the 6th day of April, 1916, in respect of any part of the income of any person to which this section applies, an additional duty of income tax at the rate of 2 shillings for every pound of that part of the income. The income to which this section applies is the income derived from securities which are for the time being included in the special treasury list, as defined by this section, while those securities are so included; and the income shall, for the purposes of this section, be deemed to be derived at the time when the interest or dividends payable, in respect to the securities, become payable.
The additional duty under this section shall not be charged on any income derived before the 29th day of July, 1916.
3. A person shall be entitled to relief from the additional duty imposed by this section—
(а) In respect of income derived between the date of the publication of the special treasury list and a date 28 days thereafter, if the securities are during that period offered to the treasury and ultimately become at the absolute disposal of the treasury ; and
(б) In respect of income derived from any securities included in the treasury .special list, if the securities have been placed at the absolute disposal of the •treasury.
The provisions of this special section shall apply to an offer of securities for -deposit in the same manner as they apply to an offer of securities for sale, and .securities when accepted for deposit shall, while so deposited, be deemed to be .at the absolute disposal of the treasury.
7. In this section the expression “ securities ” includes stocks, shares, and ■other securities, and the expression “ the treasury special list ” means any list published by the treasurer in the Gazette, and for the time being in force, of ¡securities which the treasury are willing to purchase in connection with any arrangements for the regulation and maintenance of the foreign exchanges.