Madden, Judge,
delivered the opinion of the court:
The plaintiff is the Ancillary Executor of the will of Carlos A. Grace, deceased, who was a citizen and resident of England, and who died in 1946. The plaintiff sues for *800 the refund of $666,762.75 of estate taxes which the estate paid to the United States but which it says it should not have had to pay. The tax was imposed pursuant to section 861 of the Internal Revenue Code of 1939, 26 U. S. C. (1952 ed.) 861, which says that stock in an American corporation owned, and, held, even by a nonresident not a citizen of the United States, should be subject to the United States estate tax. The question for decision is whether the decedent, at the time of his death, owned and held certain shares of stock in W. R. Grace & Co., an American corporation.
The decedent acquired the shares in question in 1910. Some time prior to 1939 he deposited them with Messrs. Coutts & Company, bankers in London, for safekeeping, and endorsed the shares in blank as was the custom in such transactions. In 1939 the United Kingdom declared war on Germany; legislation was enacted giving its government extensive war powers; pursuant to those powers the government, in order to obtain dollar assets to pay for its purchases of war supplies in the United States, required its citizens to surrender to it their stocks in American corporations so that those stocks could be pledged by it to our Reconstruction Finance Corporation to secure a loan of 425 million dollars. Coutts & Company did so surrender the stocks in question. They were shipped to the Bank of Montreal, which held them for the account of the British Treasury. In 1941 the Bank of Montreal caused the shares, which were until then registered on the books of the Corporation in the name of the decedent, to be registered in the name of Corey & Company, the bank’s nominee. Corey & Company, in turn, endorsed the shares in blank and, in that form, they were delivered to the Reconstruction Finance Corporation where they were when the decedent died in 1946. The shares were sold in 1947, with the consent of the Reconstruction Finance Corporation and the dollars received for them were applied to reduce the loan to the British Government. The British Government paid the decedent’s estate, in pounds sterling, the equivalent of the dollar proceeds of the sale of the shares.
A detailed recital of the facts, and of the legislation, receipts, and other documents, appears in our findings. The *801 case is in all material respects on all fours with our former case of Gladys May Bickford-Smith et al. v. United States, 112 C. Cls. 144, and we decide this case as we decided that one. We think that one does not own and hold shares of stock when he has no possession nor right to possession of them, all the indicia of ownership of them are in another person, and he has no right, present or future, to get them back. As we recognized in Bickford-Smith, the fact that he is to receive the equivalent, in another currency, of the dividends paid upon the stock, and of the sale price of the stock, does give him some of the benefits, and subject him to some of the burdens of ownership. But even in this connection, he is deprived of one of the prime privileges of ownership, that of deciding when the market was right for the sale of the stock.
The Government argues at considerable length that one may own and hold a thing although his interest is only equitable or beneficial and not legal, and cites Commissioner v. Nevius, 76 F. 2d 109, C. A. 2, cert. den., 296 U. S. 591. Of course the contention is valid, but it has no relation to this case. The decedent had no more right in equity than at law to possess or manage or sell the shares in the present or in the future.
The Government says that our decision in Bickford-Smith is contrary to the decision of the English Court of Appeal in English Sewing Cotton Co., Ltd. v. Inland Revenue Commissioners, which it reprints in full. 1 All England Law Reports 679 (1947). The English Sewing Cotton Co. case involved the application and computation of a British excess profits tax on corporation incomes, under a statute which provided that the income of subsidiaries should be included in that of the parent corporations, in computing the tax of the parent, if the parent owned 90 percent of the shares of the subsidiary. The English company owned 99 percent of the shares of American Thread Company, an American corporation. When the government required the surrender of the shares in American Thread, they were delivered, endorsed in blank, but their registration in the name of the parent company was never changed, and the parent company continued to vote the shares and manage and control the *802 American company as it always had done. In contrast, the decedent in our case formerly owned only 1.5 percent of the shares of the Grace Company, and, at the time in question, could not have voted the shares because they were registered in the name of a nominee of the British Government. Both the British Government and the Reconstruction Finance Corporation differentiated between American corporations in which Britons owned a controlling interest, and others, lite the Grace Company, in which they did not. They placed the two kinds of shares in separate schedules, left the former kind registered in the names of the British owners, and, as we have seen, accorded them essentially different treatment.
We think that, in all reality, the English Sewing Cotton Company owned the shares of the American Thread Company, since it was the registered owner of the shares and was actively managing and controlling the company. We think the decision of the Court of Appeal has no bearing on our problem.
The plaintiff is entitled to recover $666,762.75 with interest as provided by law.
It is so ordered.
Laramore, Judge; Whitaker, Judge; and LittletoN, Judge, concur.